UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

00 JUN 20 AM 8:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

KAYE L. PALENCHAR,                      )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   Civil Action No. CV-99-S-1745-NE
                                        )
NORTHROP GRUMMAN CORPORATION            )
and PROVIDENT LIFE & ACCIDENT           )   ENTERED
INSURANCE COMPANY,                      )
                                        )   JUN 20 2000
        Defendants.                     )

## MEMORANDUM OPINION

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff contends defendants wrongfully denied her insurance benefits in violation of 29 U.S.C. § 1132(a)(1)(B).[1] Defendant Provident Life & Accident Insurance Company ("Provident") issued accidental death, dismemberment, and plegia[2] insurance to defendant Northrop Grumman Corporation ("Northrop") for the benefit of Northrop's employees.[3] That insurance policy was denominated as "Group Travel Accident Insurance Policy Number GTA-1002." Plaintiff's former spouse was

---

[1] That statute provides, in relevant part, that an alleged beneficiary like plaintiff may file a civil action "to recover benefits due to him [or her] under the terms of his [or her] plan ...." 29 U.S.C. § 1132(a)(1)(B).

[2] "Plegia" is not a word unto itself, but a suffix connoting paralysis. *See Webster's II New Riverside University Dictionary* 903 (1994); *see also Dorland's Illustrated Medical Dictionary* 1305 (28th ed. 1994) (defining "-plegia" as "a word termination meaning paralysis, or a stroke").

[3] It is undisputed that Provident's insurance policy qualified as an "employee welfare benefit plan" for purposes of ERISA. *See* 29 U.S.C. § 1002(1).



employed by Northrop as an electrical engineer at its office in
Huntsville, Alabama.   The action presently is before the court on
cross motions for summary judgment (Doc. Nos. 10 & 15), plaintiff's
motion to strike the affidavits of Richard W. Daley and Charles S.
Beach (Doc. No. 16), submitted by defendants in support of their
motion for summary judgment, and plaintiff's motion to strike her
jury demand and dismiss all claims against defendant Northrop
Grumman Corporation (Doc. No. 17).   The court initially addresses
the latter motions.

First, the striking of plaintiff's jury demand and dismissal
of claims against Northrop is proper.   *See Howard v. Parisian,
Inc.*, 807 F.2d 1560, 1567 (11th Cir. 1987) (citing *Calamia v.
Spivey*, 632 F.2d 1235, 1236-37 (5th Cir. 1980),[4] for the
proposition that actions under ERISA to recover insurance benefits
"are not entitled to trial by jury"); *Madden v. ITT Long Term
Disability Plan*, 914 F.2d 1279, 1287 (9th Cir. 1990) (observing
that, where an ERISA plan is wholly insured, only the insurer or
plan as an entity can be sued to recover benefits allegedly owed),
*cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en
banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit
decisions handed down prior to the close of business on September 30, 1981.

(1991).   Accordingly,  the  remaining  motions  implicate  only plaintiff's claims against Provident.

Second, plaintiff's motion to strike the affidavits of Richard W. Daley and Charles S. Beach is due to be granted in part and denied in part.   The parties agree that this court's scope of review is limited to "the information known to the administrator at the time the decision [to deny insurance benefits to plaintiff] was rendered."  *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997).   That "information" is a 98-page written record relating to the death of plaintiff's spouse and the administrative processing of plaintiff's claim for insurance benefits:    the written record is reproduced as Exhibit 1 to the affidavit of Charles S. Beach.[5]   Daley's affidavit, along with paragraph 3 of Beach's affidavit, improperly seek to supplement that information. Accordingly, Daley's affidavit in its entirety and paragraph 3 of Beach's affidavit are due to be stricken.   Paragraphs 1 and 2 of Beach's affidavit, on the other hand, survive plaintiff's motion to strike, because they lay a foundation for the relevant written record submitted.

---

[5] In citing to portions of the written record *infra*, this court will reference the numbers used by Provident.  *See* Defendants' evidentiary submission in support of summary judgment (Doc. No. 10).  Those pages are denominated "P-001 - P-098" by Provident.

The court now proceeds to the cross motions for summary judgment submitted by plaintiff and Provident.  Upon consideration of the motions, briefs, evidentiary submissions, and pleadings, this court concludes Provident's motion is due to be granted, and plaintiff's motion is due to be denied.  For the reasons set forth below, therefore, this action is due to be dismissed with prejudice.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the

4

court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.  *See generally id.*; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The movant discharges this burden by "showing" or "pointing out" to the court there is an absence of evidence to support the non-movant's case.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*).  Rule 56 permits the movant to discharge this burden with or without supporting affidavits.  *See Celotex Corporation*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *See Jeffery*, 64 F.3d at 593.  The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor.  *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor

of the non-movant are not unqualified, however.  "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment."  *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).  Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).  A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

6

as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

When a court is presented with cross motions for summary judgment, it "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2720, at 335-36 (1998) (footnote omitted). "Both motions must be denied if the court finds that there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Id.* at 336-37 (footnotes omitted).

## II. FACTUAL BACKGROUND

As noted in the introduction to this opinion, the written record, contained at Exhibit 1 to the affidavit of Charles S. Beach, memorializes the undisputed facts that led to commencement of this lawsuit. While that record speaks for itself, the court undertakes a summary of points relevant to resolution of the parties' cross motions for summary judgment.

Provident issued "Group Travel Accident Insurance Policy Number GTA-1002" to Northrop on March 10, 1995.[6] The policy became

---

[6] *See* P-007.

effective on July 1, 1995, and originally was scheduled to expire on July 1, 1998.[7]   The term of the policy was extended an additional year, to July 1, 1999, by an amendment created on December 23, 1997.[8]   The policy provided accidental death, dismemberment, and plegia insurance.  All payments to support the policy were made by Northrop itself, not its employees who were benefitted.[9]

The policy provided that "full-time Employees scheduled to work twenty (20) or more hours per week" were eligible for coverage in certain circumstances.   Plaintiff's spouse, Daniel Palenchar, met the requirements of full-time employment with Northrop.  In a section entitled "Benefit Provision," the policy provided, in relevant part:

> The [P]rovident will pay a benefit for loss due to an Injury[[10]] to an Employee from a Hazard described on a following page as shown in the table below.   The loss must occur within 365 days after the date of the accident.  The Employee must be covered under the Plan on the date of the accident.
>
> The benefit is called the Principal Sum and it is shown

---

[7] *See id.*

[8] *See* P-001.

[9] *See* P-029.

[10] The term "Injury" is defined in the policy as "[a]ccidental bodily injury which: (i) is direct and independent of any other cause; and (ii) requires treatment by a legally qualified physician or surgeon."  *See* P-010.

in the Schedule of Benefits.[11]

The benefit for loss of life will be paid to the named beneficiary.   All other benefits will be paid to the Employee.

### Table of Losses

For Loss of:
Life.....................100% of the Principal Sum

.... [12]

The "Hazard described on a following page" relevant to this action

was Hazard 12, denominated as "24-Hour All Risk Accident Protection

- Business Only."[13]   The relevant text of that policy provision

provided:

Coverage will apply to an Injury sustained by an Employee when on Business for the Policyholder during any bonafide trip.

Coverage for such trip begins on the later of when an Employee leaves his or her place of residence or place of regular employment for the purpose of going on such trip.

Coverage ends on the earlier of when an Employee returns to his or her place of residence or place of regular employment.

...

The term "when on Business for the Policyholder" means furthering the business of the Policyholder.   This does

---

[11] The "Principal Sum" for employees like plaintiff's former spouse totaled "[a]n amount equal to four (4) times annual salary, subject to a maximum of $500,000."   See P-009.   The sum at issue in this case was $428,480.00.

[12] See P-012.

[13] See P-015.

<u>not include an Injury sustained during the course of</u> <u>travel to and from work</u>, leave of absence or vacation.[14]

The policy went on to provide that "[a]ny benefits paid for loss of life will be paid ... to the beneficiary ... designated in writing by the Employee."[15]  Daniel Palenchar designated plaintiff as his beneficiary.[16]

On March 3, 1998, plaintiff drove her husband from Northrop's facility in Huntsville, Alabama, to the Huntsville Airport, where he leased a rental vehicle in preparation for a business trip.  It was standard practice for Northrop employees to rent automobiles for short business trips, rather than driving personal vehicles. After procuring a rental vehicle, Mr. Palenchar returned to Northrop.  Mr. Palenchar, accompanied by two other Northrop employees, subsequently drove to Warner Robbins Air Force Base in Georgia on the afternoon of March 3rd.  The Northrop employees were scheduled to attend meetings on the following two days, and return to Huntsville on the evening of March 5th.

The meetings in Georgia ended sooner than expected, however, and the Northrop employees returned to Huntsville on the evening of

---

[14] *See* P-015 - P016 (emphasis supplied).

[15] *See* P-028.

[16] *See* P-041.

March 4, 1998.  Mr. Palenchar drove the other two employees to the Northrop facility, where they had parked their personal vehicles. Mr. Palenchar deposited some of his belongings in his office, and then drove the rental vehicle to his residence.  He arrived there at approximately 8:00 p.m. on the evening of March 4th.

Mr. Palenchar left his residence between 5:00 a.m. and 5:30 a.m. on March 5, 1998, accompanied by his son.  He still was driving the rental vehicle.  After leaving his son at a friend's house, Mr. Palenchar was involved in a two-car accident at the intersection of McKee Road and Old Railroad Bed Road in Madison County, Alabama.  The wreck occurred at approximately 6:05 a.m., and Mr. Palenchar was pronounced dead at 6:21 a.m.

On June 30, 1998, Provident paid plaintiff $454,000.00 pursuant to the terms of two other life insurance policies Mr. Palenchar held through his employment with Northrop.  The propriety of that payment is not in issue here.

Plaintiff further sought to recover insurance proceeds pursuant to the policy discussed at length above.  A.C. Newman & Company ("A.C. Newman"), Provident's claims administrator, investigated the circumstances surrounding Mr. Palenchar's death. In a letter dated October 8, 1998, A.C. Newman informed plaintiff it was denying her claim for insurance benefits.  That letter

11

provided, in relevant part:

> Mr. Pal[e]nchar's travel from his office at the Northrop
> Grumman Huntsville facility on March 4, 1998 to his
> residence and his March 5, 1998 travel from his residence
> to his office at the Northrop Grumman Huntsville facility
> is travel to and from work, which is expressly excluded
> under Definitions in Section IV, Benefit Provision,
> Hazard 12, 24-Hour All Risk Accident Protection -
> Business Only, which specifically states ... "when on
> Business for the Policyholder means furthering the
> business of the Policyholder. This does not include an
> Injury sustained during the course of travel to and from
> work, leave of absence or vacation."
>
> Thus, based on the factual information available to the
> Provident, under the express language of the ERISA Plan,
> your claim for benefits is not covered under this Policy
> because at the time of your husband's death he was not
> traveling on the business of the Policyholder, but in
> fact was traveling to and from work.[17]

Plaintiff appealed the initial denial of insurance benefits,

pursuant to Section IX of the policy:

> If your claim has been denied in whole or in part and you
> do not agree, you should write, within 60 days, to the
> claim office which advised you of the denial. Be sure
> you state why you believe the claim should not have been
> denied, and submit any data you think is appropriate.
> Your appeal will be reviewed by the office that processed
> your claim. Any appeal that cannot be resolved by that
> office will be forwarded to the insurance company's home
> office for review and final decision. The party hearing
> the appeal has the discretionary authority to interpret
> the Plan and the Policy and to determine eligibility for
> benefits. You will be notified of the final decision
> within 60 days after the date of your appeal unless there
> are special circumstances in which case you will be

---

[17] See P-058 - P-059.

notified within 120 days.[18]

Plaintiff contended the denial of benefits was improper; she argued that "if Mr. Palenchar was driving a company authorized rental car, authorized by Grumman on Grumman's time, [then] even if the strictly business pa[r]t of the trip had been completed he was still doing company business and on company time at the time of his fatal accident."[19]     Plaintiff failed to submit additional information relating to Mr. Palenchar's accident; she simply requested that A.C. Newman again review "the plain language of the contract of insurance" in assessing entitlement to insurance proceeds.[20]  For the same reasons discussed in its initial denial of insurance benefits, A.C. Newman rejected plaintiff's appeal in a letter addressed to her counsel on April 22, 1999.[21]  Plaintiff commenced this action on July 7, 1999.

### III. DISCUSSION

As an initial matter, this court must determine the proper scope of review regarding the denial of insurance benefits to plaintiff.

Consistent with the [Supreme] Court's directive in

---

[18] *See* P-029 (emphasis supplied).

[19] *See* P-068.

[20] *See* P-081.

[21] *See* P-084 - P-093.

13

> *Firestone* [*Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)], we have adopted three standards of review for plan interpretations: (1) *de novo*, applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious when the plan grants the administrator discretion, and (3) heightened arbitrary and capricious where there is a conflict of interest.

*Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir. 1997). The parties stipulate that the second standard applies in this case, since the policy clearly grants discretionary authority to the decision-making body: "The party hearing the appeal has the discretionary authority to interpret the Plan and the Policy and to determine eligibility for benefits."[22]   The propriety of that stipulation requires further analysis, however.

First, Supreme Court and Eleventh Circuit law focuses on the vesting of discretion with the <u>plan administrator</u>. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 956-57; *Paramore*, 129 F.3d at 1449. The policy at issue here expressly provides that the plan administrator is Northrop's Employee Welfare Benefits Committee, not Provident or A.C. Newman.[23]   Nonetheless, Northrop apparently delegated its plan administration duties to Provident, which in turn vested that responsibility with its claims administrator, A.C.

---

[22] *See* P-029.

[23] *See* P-029.

14

Newman.  On each occasion plaintiff requested insurance benefits or appealed the denial of insurance benefits, she initially contacted Northrop.   Northrop then forwarded plaintiff's request to A.C. Newman.[24]  Upon receipt of those requests, A.C. Newman typically responded to plaintiff in the following manner:

> A.C. Newman & Company is the claims administrator for the Provident Life & Accident Insurance Company and your claim for benefits under the above captioned policy has been submitted to our office for processing.
>
> . . .
>
> This claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").   The statu[t]es and regulations governing ERISA plans require that the claim be thoroughly investigated before determining whether coverage is available under the Policy.   In view of the foregoing Policy terms and the ERISA obligations, the Provident must conduct a thorough analysis necessary to render a decision on your claim. [[25]]

That response indicates that A.C. Newman speaks for Provident in determining eligibility for insurance benefits.   Stated differently, Provident appears to be not only the insurer, but also the plan administrator in determining eligibility for insurance benefits.[26]   This point is crucial in determining the proper standard of review, because the Supreme Court has firmly stated

---

[24] *See, e.g.*, P-031, P-067.

[25] *See, e.g.*, P-042, P-054 (emphasis supplied).

[26] *See* P-084 ("On October 8, 1998, Provident denied Mrs. Palenchar's claim for benefits under the captioned Policy ...." (emphasis supplied)).

15

that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956-57 (citation omitted).

Provident clearly has a conflict of interest in this case, by serving as both the insurer and the plan administrator.   Certain statements made by the Eleventh Circuit in *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990), are of immediate relevance here:

> Our task is to develop a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations.   This task reaches the height of difficulty in a case such as the one before us, <u>where an insurance company serves as the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets</u>.
>
> . . .
>
> Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.
>
> . . .
>
> The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate.

*Id.* at 1561, 1562 (emphasis supplied).   Provident, by serving as

16

both dispenser of insurance benefits and adjudicator of entitlement to such benefits, has a conflict of interest comparable to that established on behalf of Blue Cross and Blue Shield in the *Brown* case.

The *Brown* court went on to establish a more stringent standard of review where a conflict of interest is present.

> We emphasize the central theme of our exposition: well-established common-law principles of trusts teach that a fiduciary operating under a conflict of interest may be entitled to review by the arbitrary and capricious standard for its discretionary decisions as provided in the ERISA plan documents, <u>but the degree of deference actually exercised in application of the standard will be significantly diminished</u>. A court should not exercise *de novo* review, but the area of discretion to which deference is paid must be confined narrowly to decisions for which a conflicted fiduciary can demonstrate that it is operating exclusively in the interests of the plan participants and beneficiaries. Even a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries. The fiduciary, however, should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment. If the fiduciary carries this burden, the party challenging its action may still succeed if the action is arbitrary and capricious by other measures. This second level of evaluation is assisted somewhat by the narrowing of the justifications which the fiduciary may properly assert in defense of its actions.

*Id.* at 1568 (emphasis supplied).  In a later case, the Eleventh Circuit instructed district courts on the proper mode of analysis

17

to undertake relating to denial of a claim for insurance benefits by a "conflicted" plan administrator: "In practice, this standard [articulated in *Brown*] requires us first to determine the legally correct plan interpretation, and then, if [the administrator's] interpretation differs, whether [the administrator] was arbitrary and capricious in employing a different interpretation." *Newell v. Prudential Insurance Company of America*, 904 F.2d 644, 651 (11th Cir. 1990).

This court halts its analysis at the first step, because the "legally correct plan interpretation" comports with the conclusions reached by Provident in this case. Stated differently, Provident's decision to deny insurance benefits to plaintiff under "Group Travel Accident Insurance Policy Number GTA-1002" was legally correct, in light of the written record. Accordingly, the concerns relating to conflicts of interest articulated by the Eleventh Circuit in *Brown* dissipate.

It is undisputed that Mr. Palenchar was a Northrop employee eligible for coverage under a number of the policy's provisions, including Hazard 12. It is also undisputed that plaintiff was the named beneficiary of any insurance proceeds accruing to Mr. Palenchar based on a loss of life. Finally, it is undisputed that

18

plaintiff stood to recover $428,480.00 in the event Mr. Palenchar's death triggered coverage under the policy.[27]

Plaintiff attempts to read ambiguity into the insurance policy where none exists, by arguing that Provident's failure to define the term "loss of life" triggers application of the doctrine of *contra preferentum*, which requires a court to construe all ambiguous language in an insurance contract against the drafter. That argument is wholly without merit.[28]   Northrop purchased the policy at issue from Provident in order to provide its employees coverage for accidental death, dismemberment, and plegia under certain circumstances.   Accidental death occurred here.   Thus, the dispositive issue becomes whether Mr. Palenchar's accidental death occurred "when [he was] on Business for the Policyholder."   If it

---

[27] *See* note 11 *supra*.

[28] The court finds persuasive the arguments and authorities advanced by Provident on this issue, and adopts them as its own.   Specifically, the court emphasizes the following argument made by Provident:

> Plaintiff asserts that only an "Injury" is excluded from coverage for travel to and from work under the definition of "when on Business for the Policyholder."   This also leads to an absurd, unreasonable result because an Injury by itself does not lead to payment of a benefit.   The "Injury" must result in a covered loss (i.e., loss of life, loss of eye, etc.) to result in a benefit payment.   To exclude something for which no benefit would ever be due in the first place is an absurd, unreasonable interpretation of the policy.

*See* Defendant Provident Life and Accident Insurance Company's reply to plaintiff's opposition to defendants' motion for summary judgment (Doc. No. 23), at 6.

did, Provident is obligated to pay out the insurance proceeds to plaintiff.  If it did not, Provident has no duty to pay.

Provident's insurance coverage relating to business travel "ends on the earlier of when an Employee returns to his or her place of residence or place of regular employment [from the business location]."  Travel to and from work does not fall under the ambit of business travel.  Based on those terms, Provident is correct in its interpretation of policy coverage: Mr. Palenchar's coverage under Hazard 12 began when he departed the Northrop facility in Huntsville, Alabama, en route to Warner Robbins Air Force Base in Georgia, and concluded when he returned to the Northrop facility from Warner Robbins on March 4th.  The fact that Mr. Palenchar was still traveling in a rental vehicle at the time of his fatal accident is irrelevant to the question of whether his wife is entitled to collect insurance benefits.  Also irrelevant are certain statements made by Northrop management, particularly Kevin Sweeney,[29] which opine that Mr. Palenchar was still technically "on business" when traveling during the morning of March 5, 1998.  The express terms and general intent of the insurance policy control, which clearly indicate that plaintiff's former spouse was outside the scope of coverage at the time of his

---

[29] *See* P-051.

20

accidental death.

In sum, under any relevant standard of review, Provident's decision to deny benefits to plaintiff under "Group Travel Accident Insurance Policy Number GTA-1002" is due to be upheld by this court.

### IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to strike her jury demand and dismiss Northrop Grumman Corporation as a defendant is due to be granted. Her motion to strike certain affidavits submitted by Provident Life & Accident Insurance Company is due to be granted in part and denied in part. Finally, Provident's motion for summary judgment is due to be granted, and plaintiff's motion for summary judgment denied. The end result of these decisions is that plaintiff's case is due to be dismissed with prejudice. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this *20*th day of June, 2000.

_____
United States District Judge